FILED
2008 Mar-28  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **STEVEN B. STANLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **4:07-CV-01217-VEH** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Steven B. Stanley (hereinafter "Mr. Stanley") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied his application for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB").[1] Mr. Stanley timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTS AND PROCEDURAL HISTORY

Mr. Stanley was 51 years old at the time of his hearing before the Administrative Law Judge (hereinafter "ALJ").  (Tr. 262).  He has an education beyond high school.  (Tr. 18).  His past relevant work experience includes positions as a loader helper at a steel plant and as a receiving clerk in a plumbing warehouse.  (Tr. 263).  Mr. Stanley claims disability due to degenerative spine disease, diabetes mellitus with diabetic neuropathy, arthritis, and major depressive disorder.  (Tr. 16).  He last worked on August 1, 2000.  (Tr. 16).

Mr. Stanley filed an application for a period of disability and DIB on September 14, 2004.  (Tr. 14).  He also filed an application for Title XVI SSI on September 14, 2004.  (Tr. 14).  His claim was initially denied on February 14, 2005.  (Tr. 14).  Mr. Stanley filed a request for a hearing by an ALJ on March 23, 2005.  (Tr. 14).  The hearing took place on December 6, 2007.  (Tr. 14).  The ALJ determined that Mr. Stanley was not disabled and denied his claim on February 16, 2007.  (Tr. 21).  Mr. Stanley filed a request for a review of the ALJ's decision on March 19, 2007.  (Tr. 8).  This request was denied on May 25, 2007.  (Tr. 4).

Mr. Stanley filed a complaint on June 28, 2007, asking this court to review the decision of the ALJ.  (Doc. 1).  This court has carefully considered the record and affirms the decision of the ALJ.

2

## STANDARD OF REVIEW[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish the entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 51 (7th Cir. 1999); *accord*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy. *Foote,* 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ determined that Mr. Stanley had not engaged in substantial gainful activity since the alleged onset date of his disability on August 1, 2000. (Tr. 16).  The ALJ further found that Mr. Stanley's degenerative spine disease, diabetes mellitus with diabetic neuropathy, arthritis, and major depressive disorder were "severe" impairments based upon the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c).  (Tr. 16).  He then decided that none of Mr. Stanley's impairments or any combination of his impairments met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 of the Regulations, 20 C.F.R. Part 404.  (Tr. 16).

The ALJ concluded that Mr. Stanley had the residual functional capacity to

perform work with a light level of physical exertion.  (Tr. 17).  He also found that Mr. Stanley was unable to perform any past relevant work.  (Tr. 20).  The ALJ then applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "grids") and the testimony of a vocational expert to determine that, considering Mr. Stanley's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform.  (Tr. 20.)  Finally, the ALJ also used the grids to determine that Mr. Stanley was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible to receive DIB under §§ 216(i) and 223(d) of the Social Security Act or SSI payments under § 1614(a)(3)(A) of the Social Security Act.  (Tr. 21).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[4]  Mr. Stanley asserts that the ALJ's decision was not supported by substantial evidence and that the ALJ applied the incorrect legal standard by applying the incorrect age standard.  (Doc. 7 at 2).  In its review, this court finds that the ALJ's decision was supported by substantial evidence and that, although the ALJ applied the incorrect legal standard under the grids, the error was harmless.

## I.   THE ALJ'S DECISION THAT MR. STANLEY IS NOT DISABLED IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Mr. Stanley argues that the ALJ's decision is not supported by substantial evidence.  (Doc. 7 at 2).  This assertion is based upon two medical opinions.  First, Mr. Stanley cites a letter from Dr. Khusro, which was submitted to the Appeals Council.[5]  (Doc. 7 at 4).  Second, an evaluative examination by Dr. Wilson,[6] which was ordered by Mr. Stanley's attorney, is relied upon as evidence which is contrary to the decision of the ALJ.  (Doc. 7 at 5).

In evaluating the medical evidence as a whole, the ALJ looked to treatment records from the Veteran's Administration Hospital (hereinafter "VA") spanning a period from August 2004 to August 2006.  (Tr. 18).  From these records, which

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5]This letter is located in the administrative record at p. 257.

[6]Dr. Wilson's evaluative examination is located in the administrative record at p. 152.

included progress reports from Dr. Khusro,[7] the ALJ found no support for Mr. Stanley's allegations of pain, and the ALJ concluded that Mr. Stanley's mental condition had improved over time with the use of medications. (Tr. 19). The ALJ stated that the progress notes indicated Mr. Stanley's Global Assessment of Function (hereinafter "GAF")[8] remained above 60 throughout his treatment. (Tr. 19). The ALJ also stated, "No treating source indicated that the claimant is incapable of working." (Tr. 19). The ALJ also gave great weight to the opinions of Drs. Nichols and Alapati, which both found only mild physical and mental impairment. (Tr. 18).

However, the opinion of Dr. Wilson was given little weight by the ALJ. The Eleventh Circuit has held that opinion of a claimant's treating physician is to be given substantial weight "unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "When electing to disregard the opinion of the treating physician, the ALJ must clearly articulate [his] reasons." *Phillips*, 357 F.3d at 1241.

---

[7]*See* Tr. at 192, 201.

[8]The GAF Scale (Axis V of the Multiaxial Assessment) "is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome . . . the GAF scale is divided into 10 ranges of functioning. Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning...In most instances, ratings on the GAF Scale should be for the current period..." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-3 (4th ed. text revision, 2000) (DSM-IV-TR).

Dr. Wilson assigned Mr. Stanley a GAF of 50 and found that his level of depression and anxiety were such that he would not be able to maintain any type of competitive employment. (Tr. 18). The ALJ concluded that this consultative opinion was a "one time evaluation, the opinions of which are not supported by the evaluation itself or the preponderance of evidence in the medical file." (Tr. 19). Overall, the ALJ found that the medical evidence taken as a whole showed that Mr. Stanley was not disabled and supported a residual functional capacity to perform a light level of physical exertion. (Tr. 17). Therefore, this court finds that the ALJ's decision was supported by substantial evidence.

## II.   ALTHOUGH THE ALJ APPLIED THE INCORRECT LEGAL STANDARD BY EVALUATING THE CASE UNDER THE WRONG AGE, THE ERROR WAS HARMLESS AND REMAND IS NOT APPROPRIATE.

Mr. Stanley correctly maintains that the ALJ used the wrong age standard in evaluating whether Mr. Stanley was disabled under the grids.   (Doc. 7 at 2). However, the Commissioner responds (Doc. 8 at 6-7), and the court agrees, that such error was harmless.

Generally, the age to be applied when using the grids is the age at the earlier of the time of adjudication or at the date last insured. *See* 3 Soc. Sec. Law & Prac. § 43.150.  In this case, the ALJ used the claimant's age as of the disability onset date (45) and applied the standard of a younger individual age 45-49, Medical-Vocational

9

Rule 202.22.  (Tr. 20-21).  However, Mr. Stanley was age 50 at the date he was last insured, which was December 31, 2005.  (Doc. 7 at 1).  Thus, the proper grid rule to apply would have been that of an individual closely approaching advanced age, 50-54.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

In applying the grid rules, the ALJ found that the transferability of skills was not material to his determination because Mr. Stanley would have been found not disabled under the grids whether or not he had transferable skills.  (Tr. 20).  Similarly, application of the grids to Mr. Stanley under both age categories (younger individual and closely approaching advanced age) yields a finding of not disabled.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.15, 202.16, 202.21, 202.22.

The court has been unable to find any controlling authority directly on point that squarely indicates whether harmless error is present in such a situation.[9]  The closest binding authority located is *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that a statement of the wrong age standard constitutes harmless error when the record otherwise reflects that correct standard is actually applied).  In *Diorio*, the ALJ applied the correct age standard; however, in his opinion, the ALJ improperly stated that the claimant "was closely approaching advanced age" when he

---

[9]"The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (citing *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir.1981)).

was actually "closely approach[ing] retirement age." *Id.* at 728; *see id.* ("The ALJ actually applied Diorio's vocational factors on a section of the grids for those closely approaching retirement age; presumably he misspoke when he used the phrase 'closely approached advanced age.'"). The Eleventh Circuit held that this misstatement constituted harmless error, because the correct legal standard was actually applied. *Id.* However, in the instant case, the <u>incorrect</u> legal standard was applied; thus, *Diorio* is not entirely on point.

At least one circuit has refused to reverse in a purported borderline age situation when the application of either age category within the grids yielded a finding of "not disabled." *See, e.g., Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989) (rejecting claimant's appeal on the basis of improper classification as a "younger individual"); *id.* ("Even if Anderson was considered to be a person 'closely approaching advanced age,' application of Rule 202.10 would likewise have mandated a finding of not disabled."); *see also Loya v. Heckler*, 707 F.2d 211, 215 n.2 (5th Cir. 1983) ("Even if Loya were now classified as a person 'closely approaching advanced age,' 20 C.F.R. § 404.1563(c) (1982) (age 50-54), the tables would indicate that he is not disabled.") (citation omitted); *cf. Mays*, 837 F.2d at 1364 ("The result continued to be that Mays was 'not disabled,' and no substantial right of

his was affected.").[10]  Although the above authorities are not binding upon this court

and do not involve scenarios in which the ALJ was found to have applied the wrong

age category,[11] they do lend persuasive support to the government's position that a

remand is not appropriate when application of the correct legal standard by the ALJ

will not change the outcome of the case.  This is especially true in the instant appeal,

when application of the correct age standard still yields a finding of not disabled.  *See*

20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.15, 202.16, 202.21, 202.22.[12]

Mr. Stanley, in his opening brief to the court, asserts that the ALJ's application

of the rules for a "younger person" under 20 C.F.R. § 404.1563(c) caused the ALJ to

fail to consider the effect of Mr. Stanley's severe impairments and work experience

on his ability to adjust to other work as required for a "person closely approaching

advanced age" under 20 C.F.R. § 404.1563(d).  (Doc. 7 at 7).  However, recognizing

---

[10]No due process claim is advanced by Mr. Stanley.  However, it is worth noting that, in an administrative proceeding, proof of a denial of due process requires a showing of substantial prejudice.  *United States v. Lober*, 630 F.2d 335, 337-38 (5th Cir. 1980).  In this case, as shown, application of the correct age standard by the ALJ would have also resulted in a finding of "not disabled", which shows an absence of substantial prejudice due to the ALJ's error.

[11]In *Anderson*, the Seventh Circuit first determined that the ALJ's age classification of the claimant was correct.  *See id.*, 868 F.2d at 927 ("Anderson was born July 15, 1937, making him forty-nine years and three days old on the day the ALJ issued his decision.  He was therefore properly categorized as a 'younger individual.'").

[12]It is worth considering that, in this case, the identical outcomes in application of the grids may indicate a mere misstatement in the ALJ's opinion, which would create a situation identical to *Diorio*.  *See Diorio*, 721 F.2d at 728.

that Mr. Stanley had additional limitations that would impede his ability to perform light work as determined by the grids, the ALJ further relied on the testimony of a vocational expert to determine the effect of these limitations on Mr. Stanley's ability to find a job and adjust to it. (Tr. 21). Based on this testimony, coupled with Mr. Stanley's age, education, past work experience, and residual functional capacity, the ALJ concluded that Mr. Stanley "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 21).

Therefore, even though the ALJ wrongly classified Mr. Stanley as a "younger person" when applying 20 C.F.R. § 404.1563, the record reflects that he still made the appropriate considerations related to a "person closely approaching advanced age" as mandated by 20 C.F.R. § 404.1563(d) by relying upon vocational expert testimony that factored in these additional impairments. *See id.* ("If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."). However, the significant weight given to the vocational expert's testimony makes it necessary to consider what effect, if any, the ALJ's error in Mr. Stanley's age may have had on this testimony.

It is generally recognized that, in order for the vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that

includes all of the claimant's impairments.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  Although a claimant's age has apparently not been recognized as an express requirement of a stated hypothetical, it has been acknowledged as a major element of the question posed to a vocational expert.  *See id.* (including age, education, and past work experience as valid elements of a hypothetical).  Regardless, the court has been unable to locate any precedent within the Eleventh or any other circuit stating that the hypothetical must expressly restate the claimant's appropriate numerical age.

In the instant case, the hypothetical situation posed by the ALJ asked the vocational expert to take into account the claimant's "age, education, and past relevant work experience."  (Tr. 294).  The transcript of the hearing noted that the vocational expert was in attendance at the start of the hearing, so he was present to hear Mr. Stanley state his age (51) at the time of the hearing.  (Tr. 260, 262).  Also, although the ALJ applied the wrong age standard in his opinion, there is no reference to this incorrect age in any part of the transcript of the hearing before the ALJ.  If the ALJ had stated an incorrect age in his hypothetical to the vocational expert during the hearing, the argument for reversible error would be stronger.

However, the fact that the ALJ was silent about Mr. Stanley's numerical age when posing the hypothetical to the vocational expert, along with Mr. Stanley's own

14

testimony about how old he was at the time of the hearing, logically leads to the conclusion that it is highly unlikely that the vocational expert applied the incorrect age standard. More specifically, the only age stated in the entire transcript of the hearing is Mr. Stanley's response of "51" when asked about his current age. (Tr. 262). Therefore, reliance upon the vocational expert's testimony as substantial evidence in support of the ALJ's decision is appropriate.

In sum, the absence of any authority requiring that an explicit statement of a claimant's correct age must be made as part of a hypothetical question posed to a vocational expert, and relatedly Mr. Stanley's failure to provide any authority, controlling or otherwise, in his briefs that supports his position on appeal regarding the ALJ's misapplication of the age standard under the grids (*see generally* Doc. 7; Doc. 9),[13] make remand inappropriate. Instead, based upon this particular set of circumstances, the court is persuaded to extend by analogy, the general principles espoused by the Eleventh Circuit in *Diorio*, and by the Seventh and Fifth Circuits in *Anderson* and *Loya*, *supra*, and rule that no reversible error exists due to the ALJ's legal mistake because an application of either age category for Mr. Stanley under the

---

[13]Mr. Stanley's only authority provided is in support of the principle that the age standard is to be based upon claimant's age on the earlier of the last date the insured status was met or the adjudication date. 3 Soc. Sec. Law & Prac. § 43.150 (citing *Mastroni v. Bowen*, 646 F. Supp. 1032, 1038 (D.D.C. 1986)).

grids results in a finding of no disability.  *See also Mays*, 837 F.2d at 1364

("Procedural perfection in administrative proceedings is not required[;] [t]he court

will not vacate a judgment unless the substantial rights of a party have been

affected.") (citations omitted); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)

("No principle of administrative law or common sense requires the Commissioner to

remand a case in quest of a perfect opinion unless there is reason to believe that

remand might lead to a different result.") (citations omitted).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the

submissions of the parties, the court finds that the Commissioner's final decision is

supported by substantial evidence and although the Commissioner applied the

improper legal standard under the grids, the error, under the particular circumstances

of this case, was harmless.  Accordingly, the decision of the Commissioner will be

affirmed by separate order.

**DONE** and **ORDERED** this the 28th day of March, 2008.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge